(86 Misc. Rep. 295)

### ERNST v. TERMINAL CLEARING HOUSE ASS'N.

(Supreme Court, Special Term, New York County. June, 1914.)

1. BANKS AND BANKING (§ 9*)—CONTRACTS—VALIDITY—UNAUTHORIZED BANKING.

A contract, whereby a domestic business corporation holding certain leases calling for installment payments on articles sold to its customers secured from another domestic business corporation certain sums of money on the leases as collateral security, was void under the General

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Corporation Law (Consol. Laws, c. 23) § 22, and Banking Law (Consol. Laws, c. 2) § 107, prohibiting unauthorized banking.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 5, 6; Dec. Dig. § 9.*]

2. BANKS AND BANKING (§ 9*)—CONTRACTS—ULTRA VIRES—UNAUTHORIZED BANKING CONTRACT.

That a contract under which money was borrowed by one domestic business corporation from another on leases given as collateral security was void because violative of General Corporation Law (Consol. Laws, c. 23) § 22, and Banking Law (Consol. Laws, c. 2) § 107, prohibiting unauthorized banking, did not entitle the trustee of the bankrupt borrower to avoid the obligation to repay the loan.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 5, 6; Dec. Dig. § 9.*]

Action by Irving L. Ernst, trustee in bankruptcy of the Grand Union Company, against the Terminal Clearing House Association. Complaint dismissed.

Myers & Goldsmith, of New York City (Henry A. Heiser, of New York City, of counsel), for plaintiff.

Charles E. Thorn, of New York City, for defendant Terminal Clearing House Ass'n.

FORD, J. [1] Plaintiff is a trustee in bankruptcy. The bankrupt, a domestic business corporation, held certain leases calling for weekly, semimonthly, and monthly payments on pianos, organs, and sewing machines delivered to its customers on the "installment plan." In need of cash, it entered into a contract with the defendant, likewise a domestic business corporation, under whose terms the latter company advanced to it certain sums of money on the leases as collateral security.

At the time of the bankruptcy a substantial sum remained unpaid by the bankrupt. The trustee in bankruptcy brings this suit in equity, demanding that the contract be declared null and void; that the defendant be ordered to account to the plaintiff for all moneys received by defendant on account of said leases or conditional contracts and to pay over to plaintiff such money; that the defendant be ordered to account to the plaintiff for all pianos, sewing machines, and organs, received by the defendant from the vendees named in the leases or conditional contracts of sale hereinbefore referred to and to turn over to plaintiff said property or the value thereof; that defendant be ordered to turn over to plaintiff all leases or conditional contracts of sale received by defendant from the Grand Union Company, bankrupt as hereinbefore set forth; and that defendant be permanently restrained from receiving any moneys or property on account of the collateral hereinbefore referred to and from in any manner interfering in the collections thereof by the plaintiff. These demands are made upon the ground that the contract is ultra vires and void.

There is little doubt in my mind that the business done by the defendant with the bankrupt was prohibited by section 22 of the Gener-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

al Corporation Law and by section 107 of the Banking Law, and that the transactions were ultra vires of the corporation.

Banks call advancing money to their customers "discounting," but the borrower calls it "loaning or lending money." That is what it is in essence, and that is what the defendant and the bankrupt did. It is exactly what the statutes forbid to be done by a corporation organized under the Business Corporations Law, and no hairsplitting distinctions in nomenclature, verbiage, or phraseology can disguise the fact.

So far as the prohibition of the Banking Law and the General Corporation Law is concerned, the statute prescribes its own penalty, namely, that the "securities * * * made or given * * * shall be void." That penalty is laid upon the lending corporation and it may not be extended. It probably renders the written contract, or, more precisely, the written evidence of the loaning and borrowing contract, void. Ordinarily a note or bill is given to secure the loan, but security in that form is lacking here. The money seems to have been loaned on the written contract instead of upon the usual form of commercial paper. The decisions clearly hold that a note or bill taken under such circumstances is void. It follows that the contract in this case is void, as it seems to me.

[2] Thus far I can follow the reasoning of plaintiff's counsel. But what then? It does not follow that the debt or the leases given to secure it are void. Curtis v. Leavitt, 15 N. Y. 9; Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531; Pratt v. Eaton, 79 N. Y. 449; Duncomb v. New York, H. & N. R. R. Co., 84 N. Y. 190. Nor should it be forgotten that the plaintiff trustee stands in the shoes of the bankrupt and that any lack of power in the corporation to make the loan would not have been available to it in avoidance of its obligation to fully repay the loan. Whitney Arms Co. v. Barlow, 63 N. Y. 62, 20 Am. Rep. 504.

It is not charged that the transaction was in fraud of creditors nor violative of the Bankruptcy Act. The creditor has a valid claim secured by the leases. It makes no claim against the bankrupt's estate and is content, for aught that appears, to stand upon the transaction as made with the bankrupt. It seems to me that that is its privilege. Should it file its claim against the estate, quite a different situation would be presented.

Complaint dismissed on the merits, with costs.